IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IVEY GRANT, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL ACTION NO. |
| | :: | 1:09-CR-482-TWT-LTW-5 |
| | :: | |
| UNITED STATES OF AMERICA, | :: | CIVIL ACTION NO. |
| Respondent. | :: | 1:14-CV-1035-TWT-LTW |

## **ORDER AND FINAL REPORT AND RECOMMENDATION**

Movant is a federal prisoner who, pro se, challenges under 28 U.S.C. § 2255 his judgment of conviction. (Docs. 401, 403.)[1] Respondent opposes the motion. (Doc. 409). Movant filed a motion for leave to file a traverse, or reply brief, which is **GRANTED**. (Doc. 414.) For the reasons discussed below, the undersigned recommends that Movant's § 2255 motion be denied and that a certificate of appealability be denied.

## I.    **Background**

A grand jury indicted Movant, in a single count, for conspiring to distribute at least 100 kilograms of marijuana and at least five kilograms of cocaine. (Doc. 35.) In August 2011, a trial jury convicted Movant of the marijuana charge, but not the

---

[1] All citations to the record are to case number 1:09-cr-482-TWT-LTW.

cocaine charge.  (Doc. 330.)  The jury further found that Respondent did not prove

that Movant's business property was subject to forfeiture.  (Doc. 331.)

A summary of the key evidence in the case follows:

[Movant] owned Hi–Tech Manufacturing Services, a truck-welding shop
in Lithonia, Georgia. Aside from performing welding services, [Movant]
allowed others to park their trucks on his property. One such individual
was Marlon Burton, whom FBI agents had been investigating for drug
trafficking. In November of 2008, the FBI sought (and obtained) a
wiretap to intercept calls made on a cellular telephone used by Mr.
Burton. FBI Special Agent Nikki Badolato submitted an affidavit
containing information gathered over the course of the investigation,
including information provided by an unidentified cooperating witness
(CW–1), a second cooperating witness later identified as Leon Lumsden
(CW–2), an undercover FBI agent, and recorded telephone calls. During
the course of the investigation, and with the aid of information garnered
from this wiretap, the FBI gathered evidence about [Movant's] role in
Mr. Burton's criminal enterprise.

. . . .

At trial, two cooperating co-defendants testified for the government: Mr.
Burton and Otoniel Herrera, a truck driver who transported marijuana to
Hi–Tech. Mr. Herrera testified that he delivered three separate loads of
marijuana to Atlanta, which were unloaded at Hi–Tech.

Mr. Burton testified about [Movant's] role in the drug trafficking
conspiracy as follows. Mr. Burton rented space at Hi–Tech to unload
large quantities of drugs from trailers coming from Mexico and to load
them with drug proceeds for delivery back to Mexico. Mr. Burton paid
[Movant] approximately $6,500 per load of marijuana and $13,000 per
load of cocaine that was loaded or unloaded at Hi–Tech; in total, he used
Hi–Tech 30 or 40 times to unload marijuana and cocaine. He notified

2

[Movant], by telephone, when trucks carrying drugs were en route to Hi–Tech and [Movant] routinely went to his shop to open the gate and allow the trucks to enter his property.

Mr. Burton also testified that [Movant] required the trucks to arrive in the dark and helped clear the way for the trucks to back up to the main building to unload. [Movant] was thin and able to crawl inside the truck across the legitimate load, often fruit or produce, to unload the marijuana bales. If necessary, [Movant] would drive the forklift to remove the legitimate load and locate the marijuana. After unpacking the marijuana bales, he burned the packaging at his shop.

*United States v. Grant*, 521 F. App'x 841, 842, 844 (11th Cir. 2013).  Attorney L. Burton Finlayson represented Movant in pre-trial proceedings, at trial, and at sentencing.

Before trial, Finlayson filed motions to suppress the wiretap evidence, Movant's post-arrest statements, evidence from Movant's cell phone, and other evidence and supplemented those motions as additional information became available.  (Docs. 79 through 84, 128, 130, 219, 220, 263, 269.)  The undersigned held evidentiary hearings on those motions.  (Docs. 118, 261, 262.)  The undersigned also held hearings on the motions Finlayson filed for disclosure of evidence.  (Docs. 180, 201.)

The undersigned ultimately recommended that Movant's motions to suppress evidence be denied.  (Doc. 272.)  Finlayson filed objections to my report and

3

recommendation. (Doc. 278.) The Honorable Thomas W. Thrash, Jr. overruled the objections and denied the motions to suppress. (Doc. 281.)

Finlayson also filed before trial motions in limine to exclude expert testimony and character evidence and a motion for disclosure of the testifying co-defendants' pre-sentence reports ("PSR"). (Docs. 297 through 300.) The Court held a hearing on those motions and denied them. (Doc. 375.)

After trial, and before sentencing, Finlayson filed a motion for new trial. (Doc. 341.) Finlayson argued in that motion that the wiretap evidence was erroneously admitted at trial and presented new evidence to support that argument. (*Id.*; Docs. 341-1, 359.) The Court heard argument on that motion at the sentencing hearing and denied it. (Doc. 380 at 5-6.)

Finlayson also filed a sentencing memorandum. (Docs. 360, 361.) Finlayson argued, among other things, that Movant's sentence should not be enhanced based on conduct for which he was acquitted (primarily the conspiracy to traffic cocaine) and that the sentence should be below the range set by the U.S. Sentencing Guidelines (the "Guidelines") because of Movant's low culpability in the drug trafficking operation. (Doc. 360.) Finlayson submitted with his memorandum forty-one letters requesting leniency for Movant. (Docs. 360-2, 360-3, 360-4, 361-1.)

4

At sentencing, the Court found Movant responsible for 2,195.12 kilograms of marijuana, but did not hold him responsible for any cocaine. (Doc. 380 at 11.) That reduced by six levels Movant's base offense level under the Guidelines. (*Id.* at 13, 20.) The statutory minimum sentence was five years' imprisonment and the statutory maximum was forty years. (*Id.* at 21.) The Guidelines range was 121 to 151 months' imprisonment. (*Id.*)

The Court sentenced Movant to 108 months of imprisonment and five years of supervised release. (Doc. 363.) The Court found that a sentence slightly below the Guidelines range was appropriate "because in my opinion such a sentence is a fair and reasonable one considering the sentencing factors set forth in Title 18, U.S. Code, Section 3553(a)." (*Id.* at 42.) The Court found the 108-month sentence "fair considering [Movant's] age, considering his lack of any prior criminal convictions, considering his family history and responsibilities" and that "the sentence is a fair and reasonable one considering the sentences that I have imposed on his co-Defendants." (*Id.* at 43.) The Court also found the sentence appropriate given that "[t]he evidence of [Movant's] guilt at trial was overwhelming." (*Id.* at 42.)

Movant appealed and was represented by Attorney Amanda R. Clark on appeal. Movant argued on appeal that the Court erred by denying his pre-trial motion to

AO 72A
(Rev.8/82)

suppress the wiretap evidence and by instructing the jury on deliberate ignorance. *Grant*, 521 F. App'x at 842. The court of appeals affirmed the judgment. *Id.*

Movant contends in his § 2255 motion that Finlayson rendered ineffective assistance. (Doc. 401 at 5-8.) Specifically, Movant contends that Finlayson improperly failed to:

1.  move to dismiss the indictment or for a judgment of acquittal based on the indictment not being returned in open court;

2.  properly investigate the case, seek a plea agreement, and advise Movant to plead guilty;

3.  advise Movant to seek a bench trial based on stipulated facts; and

4.  render effective assistance because of the "Cumulative Impact Of Multiple Deficiencies Or Errors By Counsel During The Pretrial, Plea, Trial, Sentencing And Direct Appeal Process."

(*Id.*) Movant contends in his fifth, and final, ground for relief that his

Conviction And Sentence Are Violative Of His Right To Freedom Of Speech And To Petition, His Right To Be Free Of Unreasonable Search And Seizure, His Right To Due Process Of Law, His Rights To Counsel, To Jury Trial, To Confrontation Of Witnesses, To Present A Defense, And To Compulsory Process, And His Right To Be Free Of Cruel And Unusual Punishment Under The Constitution.

(*Id.* at 8-9.)

6

II.     **Relevant Legal Standards**

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  A sentence is subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice.  *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).

"Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a [] § 2255 challenge" unless the movant shows "both cause for his default as well as demonstrating actual prejudice suffered as a result of the alleged error."  *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004).  "[T]o show cause for procedural default, [a § 2255 movant] must show that some objective factor external to the defense prevented [him] . . . from raising his claims on direct appeal and that this factor cannot be fairly [attributed] to [his] own conduct."  *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004).  "Actual

7

prejudice" requires a movant to show that the alleged error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Reece v. United States*, 119 F.3d 1462, 1467 (11th Cir. 1997).

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). To establish deficient performance, a movant must establish that no objectively competent lawyer would have taken the action that his lawyer took or would have failed to take the action he contends the lawyer should have taken. *Id.* at 1315.

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable

8

probability is a probability sufficient to undermine confidence in the outcome." *Id.*

A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Id.* at 697.

## III.   Analysis

An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Fontaine v. United States*, 411 U.S. 213, 215 (1973). The record in this case conclusively demonstrates that Movant is not entitled to relief under § 2255.

### A.   Ground One

Movant contends that Finlayson was deficient for not challenging the indictment because "the face of the indictment showed that it was 'Filed in Chambers' instead of 'open court.'" (Doc. 401 at 13.) Movant contends that there is a reasonable probability that the indictment would have been dismissed if Finlayson had raised this issue. (*Id.* at 13-14; Doc. 403 at 9-10.)

The Court's records refute Movant's claim that his indictment was not returned in open court. (Doc. 409-1.) The grand jury's minute sheet demonstrates that the indictment was returned before the Honorable Gerrilyn G. Brill, a Magistrate Judge on this Court, on December 8, 2009 at 5:06 p.m. (*Id.*) That is the same day the

9

indictment was issued and filed in chambers. (Doc. 35.) Because there is no merit to

Movant's claim that the indictment was not properly returned, Finlayson was not

deficient for not raising the claim. *See Owen v. Sec'y for Dep't of Corr.*, 568 F.3d

894, 915 (11th Cir. 2009) (holding that because claims lacked merit, "any deficiencies

of counsel in failing to raise or adequately pursue them cannot constitute ineffective

assistance of counsel").

B.    Ground Two

Movant contends that Finlayson advised him to stand trial without conducting

an adequate investigation of the case. (Doc. 401 at 14-20.) Movant contends

Finlayson should have tried to negotiate a favorable plea agreement or advised

Movant to plead guilty without an agreement given the overwhelming evidence

against him. (*Id.*)

Movant has not identified anything that Finlayson should have investigated or

any evidence that he should have discovered in his pretrial investigation. (*Id.*; Doc.

403.) Movant simply alleges, in a conclusory fashion, that Finlayson did not perform

an adequate and complete investigation. (*Id.*) Nothing in the record supports

Movant's claim that Finlayson did no pretrial investigation or did not know the

"amount and quality of evidence available to the United States to use against

10

[Movant]." (*See id.* at 15.)  The record instead demonstrates that Finlayson knew all the evidence and repeatedly challenged the admission of that evidence before, during, and after trial.  *See supra* Part I.

Movant also has offered nothing to support his conclusory claim that Finlayson conducted an "incomplete factual investigation as to the government's actual conviction rate after federal criminal trials." (*See* Doc. 401 at 15.)  Finlayson has practiced as a criminal defense lawyer in this Court for many years, and nothing suggests that despite his extensive experience he is oblivious to the federal government's success in criminal trials.

In short, Movant has offered nothing to support his conclusory allegations of a deficient pretrial investigation.  The U.S. Supreme Court recently emphasized, again, that criminal defense counsel "should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'" and reminded courts to faithfully apply the "'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland* in case involving claim that defendant went to trial, rather than pleading guilty, because of lawyer's ineffective assistance).  Movant has not overcome that strong

11

presumption with regard to Finlayson's pretrial work and alleged failure to advise Movant to plead guilty.

Even if Movant had shown deficient performance, he has not shown prejudice, i.e., that there is a reasonable probability that he would have obtained a better outcome absent the deficient performance. Movant does not say that he actually would have pled guilty, with or without a plea agreement, if Finlayson had given him better advice. Movant instead contends only that "there is a reasonable probability" that he would have pled guilty. (Doc. 401 at 19; Doc. 403 at 18-19.)

When a § 2255 movant contends that he would have pled guilty if he had received proper advice from his lawyer, *Strickland*'s standard applies. The movant "'must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial.'" *Coulter v. Herring*, 60 F.3d 1499, 1504 & n.7 (11th Cir. 1995) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). That inquiry includes considering the probability that the movant would have obtained a more favorable outcome by pleading guilty than he did by standing trial. *See Hill*, 474 U.S. at 59.

Movant contends Finlayson should have sought a plea deal, but there is no evidence that Respondent would have agreed to one. Respondent's trial counsel

12

stated that Respondent did not offer, and would not have offered, the type of plea deal

Movant contends Finlayson should have sought.  (Doc. 409 at 18.)  Movant has

presented no evidence disputing that and nothing to show a reasonable probability that

he could have gotten a plea deal more favorable than the outcome of his trial had

Finlayson sought one.[2]

Nor is there a reasonable probability of a more favorable outcome if Movant

had entered a non-negotiated plea or a "no contest" plea, which he argues Finlayson

also should have recommended.  Again, Movant does not even definitively state that

he would have pled guilty with better advice, i.e., that he would have pled guilty if he

---

[2] Because Respondent did not offer a plea deal, the modified *Strickland* standard set out in *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) and *Missouri v. Frye*, 132 S. Ct.1399 (2012) does not apply.  The defendants in *Lafler* and *Frye* were offered plea deals, but they did not accept the offers because, they claimed, they received ineffective assistance of counsel. *Lafler*, 132 S. Ct. at 1383; *Frye*, 132 S. Ct. at 1404. The Supreme Court limited its holdings in those cases to cases where the government offers a plea deal. *Frye*, 132 S. Ct. at 1409 ("This application of *Strickland* to the instances of an uncommunicated, lapsed plea does nothing to alter the standard laid out in *Hill* [for claims of ineffective assistance where there is no plea offer]."); *Lafler*, 132 S. Ct. at 1387 ("If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise.").

13

knew then what he knows now.[3]  The record demonstrates that Movant would not have been better off with a non-negotiated plea for at least two reasons.

First, a non-negotiated plea to the only count in the indictment in which Movant was charged would have involved admission to a crime for which the jury acquitted Movant.  Count one of the indictment charged Movant with conspiring to distribute at least five kilograms of cocaine, which carried a statutory minimum prison sentence of ten years, and conspiring to distribute at least 100 kilograms of marijuana, which carried a minimum prison sentence of five years.  (Doc. 35 at 1-3); 21 U.S.C. §§ 841(b)(1)(A)-(B), 846.  The jury convicted Movant of only the marijuana charge, thus subjecting him to the five-year minimum prison sentence. (Doc. 330.)  If Movant instead had pled guilty to count one without a plea deal as he suggests, he would have faced a minimum ten-year prison sentence, which is longer than the sentence he actually received. *See United States v. Betancourt*, No. CR-09-0156-FVS-4, 2012 WL

---

[3] The emphasis Movant placed on preserving his right to appeal the denial of his motions to suppress the wiretap and other evidence refutes any claim that he would have pled guilty. (*See* Doc. 401 at 16, 19, 21-23.)  Because those evidentiary issues are not jurisdictional, any appeal of them would have been barred by an unconditional guilty plea. *See United States v. Armstrong*, 546 F. App'x 936, 938 (11th Cir. 2013) (unconditional guilty plea "waives all non jurisdictional defects in the trial proceedings, including the district court's refusal to suppress evidence"); *see also* Fed. R. Crim. P. 11(a)(2) (conditional and no contest pleas require court's and government's consent).

14

2839320, at *3 (E.D. Wash. July 10, 2012) (§ 2255 movant who was sentenced to less than seven years in prison did not show prejudice on claim that counsel should have advised him to plead guilty where "if [he] had pleaded guilty without a plea agreement, he would have been subject to a combined minimum sentence of 15 years").

Second, even if the ten-year minimum sentence did not apply, the record demonstrates that Movant would have received the same 108-month prison sentence if he had pled guilty. The Court departed downward from the advisory Guidelines range in imposing the 108-month sentence. (Doc. 380.) Movant concedes that if he had pled guilty and received full credit under the Guidelines for acceptance of responsibility, the new Guidelines range would have extended to 108 months. (Doc. 401 at 12.)

The Court made clear at sentencing that it found the 108-month prison sentence to be the appropriate sentence regardless of what the Guidelines advised. The Court found the 108-month sentence "a fair and reasonable one considering the sentencing factors set forth in [18 U.S.C. § 3553(a)] . . . [Movant's] age . . . his lack of any prior criminal convictions . . . his family history and responsibilities . . . [and] the sentences that [the Court] . . . imposed on his co-Defendants." (Doc. 380 at 42-43.) The Court

15

recited the statutory factors supporting the sentence and gave no indication that it would go even further below the Guidelines range for any reason, including if Movant had pled guilty. (*Id.*) Movant has presented nothing to support a finding that the Court would have imposed a lesser sentence if he had pled guilty.

For all those reasons, Movant has shown neither deficient performance by Finlayson nor the prejudice required to prevail on his ineffective assistance claim regarding a guilty plea. Movant thus is not entitled to relief on ground two.

C.    Ground Three

Movant contends that Finlayson should have sought a bench trial on stipulated facts as another way for Movant to obtain a reduced sentence for accepting responsibility. (Doc. 401 at 20-24.) Movant contends that if there had been a bench trial he "would have agreed that the testimony and evidence would be as it was presented at trial before the jury" so the Court could have "decided the legal effect of the stipulated facts and the . . . decision would have been reviewable on direct appeal." (*Id.* at 23; Doc. 403 at 13 (stating that he "would have stipulated to the testimony and evidence as presented at trial").) This ineffective assistance claim fails for many of the same reasons the claim in ground two fails.

16

First, Movant has offered nothing to support a finding that Respondent would have consented to a bench trial and the Court would have approved of one. *See* Fed. R. Crim. P. 23(a) (trial must be by jury if defendant is entitled to it unless the government consents to and the court approves of a bench trial). There is no basis to conclude that Finlayson should have seen a bench trial as a viable option. The Court cannot fault Finlayson based on a finding, in hindsight, that the evidence of guilt presented at trial was overwhelming. *See Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (en banc) ("The widespread use of the tactic of attacking trial counsel by showing what 'might have been' proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.").

Second, Movant's assertion that he would have admitted in a bench trial to all the facts that were presented at his jury trial means that, as with a non-negotiated guilty plea, he would have faced a minimum ten-year prison sentence for the cocaine charge for which the jury acquitted him. Movant has not shown a reasonable probability that he would have been acquitted of the cocaine charge if, instead of challenging the facts as he did in his jury trial, he had stipulated to them in a bench trial. Under Movant's proposed scenario, there would have been no cross-

17

examination of Respondent's witnesses, including the co-defendants who testified against Movant at the jury trial, or other testing of the evidence.[4]

Finally, Movant has not shown a reasonable probability that the Court would have imposed a prison sentence less than 108 months if there had a been a bench trial on stipulated facts.  As discussed above, the record indicates that the Court would have imposed the same sentence – or a greater sentence if it had found Movant guilty of the cocaine charge – in that situation.  *See supra* Part III.B.

Movant's conclusory claim that Finlayson was ineffective for not seeking a bench trial on stipulated facts fares no better than his ineffective assistance claim in ground two.  Movant is not entitled to relief on ground three.

D.    Ground Four

Movant claims that he received ineffective assistance of counsel "Due To Both The Individual And Cumulative Impact Of Multiple Deficiencies Or Errors By Counsel During The Pretrial, Plea, Trial, Sentencing And Direct Appeal Process." (Doc. 401 at 8.) Movant essentially argues in ground four that his counsel did nothing

---

[4] Finlayson successfully challenged some of Respondent's evidence at trial.  As noted, he convinced the jury that Movant did not conspire to distribute cocaine as charged in the indictment.  And at least one juror suggested after trial that Finlayson eroded the credibility of the co-defendants' testimony. (*See* Doc. 359-2.)

right and lists several generic categories of alleged failures. (*Id.* at 24-26; Doc. 403 at 15-16.) Courts "address claims of cumulative error by first considering the validity of each claim individually, and then examining any errors [found] . . . in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012).

Movant begins his litany of errors in ground four by repeating his ineffective assistance claims in grounds one through three regarding the indictment, a guilty plea, and a bench trial on stipulated facts. (Doc. 401 at 24.) As discussed above, Movant has shown neither deficient performance nor prejudice as to those claims. *See supra* Parts III.A through III.C. Those claims thus provide no support for Movant's claim of cumulative error. *See Morris*, 677 F.3d at 1132 (holding that cumulative error claim failed because none of the individual claims of error had any merit and, thus, there was "nothing to accumulate").

Movant's remaining claims are conclusory and without factual support. For example, Movant claims that Finlayson "unprofessionally failed to investigate or present available, material, exculpatory evidence and testimony at trial and failed to timely object to the unlawful admission of evidence by the prosecution," but he

19

identifies no evidence on either point. (Doc. 401 at 25.) Movant claims that Finlayson "unprofessionally failed to timely request appropriate jury instructions and to timely object to insufficient instructions" and "failed to timely object to improper [closing] argument by the prosecution," but identifies no jury instructions or any argument by the prosecutor. (*Id.*) Movant further claims that Finlayson "unprofessionally failed to investigate or present available evidence and legal authority material [at] . . . sentencing" and "failed to object to, unlawful, false and unreliable evidence used" at sentencing, but again identifies no evidence or law. (*Id.*)

The same is true of Movant's vague and conclusory allegation that Clark, his appellate lawyer, "unprofessionally failed to investigate or present the strongest issues available . . . for his direct appeal and failed to preserve viable issues for collateral review." (*Id.*) And it is true of Movant's final claim that "counsel labored under an actual conflict of interest which adversely affected their performance during the pretrial, plea, trial, sentencing and direct appeal process in this case" because they "owed a 'duty' other than to [Movant]." (*Id.*) Movant identified no conflict, the alleged "duty," or to whom counsel owed the "duty." (*Id.*); *see Ferrell v. Hall*, 640 F.3d 1199, 1244 (11th Cir. 2011) ("[T]he mere possibility of conflict does not constitute a Sixth Amendment violation."); *Reynolds v. Chapman*, 253 F.3d 1337,

20

1342-43 (11th Cir. 2001) (to prevail on a claim that counsel had an unconstitutional conflict of interest, "a defendant must show something more than a possible, speculative, or merely hypothetical conflict." (quotation marks omitted)).

A § 2255 movant cannot satisfy his burden of demonstrating ineffective assistance of counsel with "unsupported allegations, conclusory in nature and lacking factual substantiation." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991). Yet Movant has offered nothing more than just that. Ground four essentially is a "shotgun" count that simply blasts several conclusory allegations of ineffective assistance. Ground four contains nothing to satisfy Movant's burden of showing that each of counsel's alleged acts or failures "was so patently unreasonable that no competent attorney would have chosen it [or failed to so act]." *See Kelly v. United States*, 820 F.2d 1173, 1176 (11th Cir. 1987) (quotation marks omitted); *see also Bates v. Sec'y, Fla. Dep't of Corr.*, ___ F.3d ___, No. 13-11882, 2014 WL 4384241, at *15 (11th Cir. Sept. 5, 2014) ("[T]he *Strickland* test 'has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer could have acted, in the circumstances, as defense counsel acted at trial.'" (quoting *Waters*, 46 F.3d at 1512)).

21

Because Movant has shown no individual, much less cumulative, error amounting to ineffective assistance of counsel, he is not entitled to relief on ground four.

E.    Ground Five

Ground five is even more conclusory than ground four, as it consists of just one sentence that lists several constitutional rights that Movant claims his judgment of conviction violates.   (Doc. 401 at 8-9.)   Movant did not further discuss those conclusory claims in his § 2255 motion, his brief in support of the motion, or his reply brief. (Docs. 401, 403, 415.)  Movant has shown no basis for relief on ground five.

The claims in ground five also are procedurally defaulted because Movant did not raise them on direct appeal. *See Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004) ("Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a [] § 2255 challenge" unless the movant shows "both cause for his default as well as demonstrating actual prejudice suffered as a result of the alleged error."); *see also Grant*, 521 F. App'x at 842 (listing Movant's claims on direct appeal).  Ineffective assistance of counsel may constitute cause for a procedural default, but "[n]ot just any deficiency in counsel's performance will do[.] . . . [T]he assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). As discussed above,

22

Movant has not shown that Clark rendered ineffective assistance on appeal. *See supra* Part III.D. Because the claims in ground five are wholly conclusory and procedurally defaulted, Movant is not entitled to relief.

## IV.   Certificate of Appealability ("COA")

A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

23

A COA is not warranted here. Movant has not shown that he received ineffective assistance of counsel or that there is any merit to his conclusory claims, and that conclusion is not reasonably debatable.

## V.   Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Movant's motion to vacate sentence under 28 U.S.C. § 2255 [401] and a certificate of appealability be **DENIED** and that case number 1:14-cv-1035-TWT-LTW be **DISMISSED**. Movant's motion for leave to file a reply brief [414] is **GRANTED**.

**SO ORDERED & RECOMMENDED** this _15_ day of _September_, 2014.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)